TODD BOLEY, SBN 68119
ZOYA YARNYKH, SBN 258062
2831 Mariner Square Dr., Suite 280
Alameda, CA 94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170

PETER W. ALFERT, SBN 83139
HINTON ALFERT & KAHN LLP
200 Pringle Ave., Suite 450
Walnut Creek, California  94596
Telephone: (925) 279-3009
Facsimile:  (925) 279-3342

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ZUCCARO, and S.G., a minor, by and through her guardian ad litem STEPHANIE ZUCCARO,<br><br>Plaintiffs,<br><br>v.<br><br>MARTINEZ UNIFIED SCHOOL DISTRICT, LOUISE DOMBROWSKI,  DAVID ROBERTSON, and DOES 1-30,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND |

Plaintiffs Stephanie Zuccaro and S.G., a minor by and through her guardian ad litem, allege as follows:

## PARTIES

1. Plaintiff STEPHANIE ZUCCAARO is a resident of the City of Martinez, County of Contra Costa, California.  She brings this action on her own behalf and as guardian ad litem on behalf of her daughter, S.G.

2. Plaintiff S.G. is a minor and a resident of the City of Martinez, County of Contra Costa, California.  At the time of the events underlying these causes of action, S.G. was a special education student entrusted to the care of Defendant MARTINEZ UNIFIED SCHOOL DISTRICT

("MUSD" or "District") and other named Defendants at Martinez Early Intervention Preschool Program ("MEIPP").

3.      Defendant MUSD is a public entity duly incorporated and operating under California law as a school district.  MUSD has the responsibility of providing S.G. with full and equal access to a public education in compliance with federal and state laws and regulations, including those pertaining to the use of force and restraint.

4.      Defendant DAVID ROBERTSON ("ROBERTSON") was the Assistant Superintendent of MUSD during the 2013-2014 school year.  Based on information and belief, ROBERTSON was responsible for the hiring, training and supervision of District staff.  On information and belief, he was also responsible for ensuring compliance with state and federal laws pertaining to behavior interventions, supervision and training.  All actions alleged herein by ROBERTSON were taken under color of state law and in the course and scope of his employment with MUSD.

5.      Defendant LOUISE DOMBROWSKI ("DOMBROWSKI") was a special education teacher at MEIPP beginning August 2013.  On information and belief, Ms. DOMBROWSKI's responsibilities included providing the structure and consistency that would enable a child with disabilities such as S.G. to access an appropriate education and progress educationally as well as emotionally and behaviorally.  All actions alleged herein by DOMBROWSKI were taken under color of state law and in course and scope of her employment.

6.      The true names and capacities of defendants sued as DOES 1-30 are unknown to Plaintiffs and Plaintiffs pray leave to amend to allege their true names and capacities when they are ascertained.

## FACTUAL ALLEGATIONS

**A.      Allegations Relating to S.G. and ZUCCARO**

7.      Plaintiffs have complied with the claim presentation requirements of the California Government Tort Claims Act, Cal. Gov. Code §§ 810 *et seq.*

8.      Plaintiff S.G. was born on September 11, 2009.  Plaintiff STEPHANIE ZUCCARO is her mother.

9.      S.G. has been diagnosed with hemiplegic cerebral palsy and seizures as a result of a left hemisphere stroke while in utero.  She is also developmentally delayed.  Due to the cerebral palsy, S.G. has minimal use of the right side of her body, which severely impacts her mobility, including ability to walk.

10.      As a result of S.G.'s disabilities, she was made eligible for special education services and supports pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*

11.      During the 2013-2014 school year, S.G. was a student assigned by the MUSD to the preschool special education classroom of Defendant DOMBROWSKI at MEIPP.

12.      During the 2013-2014 school year at MEIPP, S.G. was subjected to physical, psychological, and verbal abuse.  The abuse included aides frequently hitting S.G., the teacher forcefully and painfully dragging S.G. when her physical disability prevented her from moving as quickly as the teacher would have liked.  After the final incident on May 19, 2014, S.G. told her parents that the aides in DOMBROWSKI's class, Ms. Patty and Ms. Erica, hit her.  Plaintiffs will amend the complaint once the exact identities of these aides are ascertained.

13.      S.G's behavior deteriorated dramatically during her time in DOMBROWSKI's class.  She resisted going to school, complaining of stomach aches in order to stay home, and displayed uncharacteristic anger, anxiety and stress.  Prior to May 20, 2014, S.G.'s parents had no reason to believe that these behavioral changes were the result of abuse she suffered at school.

14.      S.G. was the only student in the class with relatively well-developed verbal abilities, and DOMBROWSKI has been overheard saying that she only wanted non-verbal children in her classroom.

15.      Plaintiff ZUCCARO became concerned about S.G.'s changed behavior.  However, due to her disabilities, S.G. was unable to articulate the causes of her distress to her mother.

16.      On or about May 20, 2014, Plaintiff ZUCCARO received an email from another parent whose child attended MEIPP.  The email described in great detail how DOMBROWSKI was dragging S.G. by the arm to the bus, while S.G. was struggling to keep up due to her limited mobility and inability to use the right side of her body, all the while crying out: "You are hurting

me! You are being mean!" to DOMBROWSKI, to which DOMBROWSKI replied: "Yes, I am being mean because you were mean to me." S.G. was only four years old at the time.  The parent also mentioned in her email that this was not the first time she has observed DOMBROWSKI mishandle S.G., and that she wished she had notified the District sooner.  In addition to the physical abuse, the parent reported that she had overheard S.G. being called a "bad girl" by DOMBROWSKI and/or other school personnel.  The parent who witnessed the abuse sent an email to District administrators as well as S.G.'s mother describing what she saw.  The District promised to investigate, yet DOMBROWSKI was allowed to return to the classroom two weeks later, long before Martinez Police Department finished their investigation of these serious allegations of child abuse.  Ms. Zuccaro stopped sending S.G. to school upon learning of the May 19, 2014 incident.

17.     After learning about the allegation, MUSD put DOMBRWOSKI on administrative leave.  In response to MUSD's inquiries, DOMBROWSKI admitted that she was walking too fast for S.G., given her mobility impairment.  In spite of this fact and in spite of what DOMBROWSKI told S.G. as she was dragging her to the bus, MUSD determined that DOMBROWSKI "did not intend to hurt" S.G., and decided to allow her to return back into the classroom on June 4, 2014. No written reprimand was put into her personnel file, which ultimately allowed her to teach in another school in Lodi, California.  It is unclear whether MUSD took any disciplinary action against DOMBROWSKI.

18.     As part of its response, MUSD issued a memorandum to DOMBROWSKI on June 3, 2014, which instructed her to refrain from negative verbal interactions with students, be aware of students' disabilities and to provide appropriate support, to escort students at a pace that is less than or meets the minimum of their physical restrictions, and to work with staff to maintain visual contact of all students at all times.  Furthermore, the memorandum instructed DOMBROWSKI that if a child says that they are hurt (as S.G. had done); she is to stop and adjust her actions immediately to determine appropriate response and actions.

19.     MUSD and ROBERTSON did not include the written memorandum into DOMBROWSKI's file detailing the procedures she was to follow.  On information and belief, DOMBROWSKI went on to teach in Lodi, California, and neither parents nor administrators there

were aware of the allegations against her due to District and ROBERTSON's failure to properly include the letter of the findings of their investigation in her file.

20.     As a result of the abuse, S.G. has experienced very serious emotional distress and suffering.  The failure of MUSD to advise Ms. ZUCCARO of the abuse of S.G. at MEIPP caused Ms. ZUCCARO to suffer emotional distress.  She was deprived of the ability to comfort her daughter or to provide appropriate counseling, medical and/or psychological care.  The failure to advise Ms. ZUCCARO gave rise to the severe emotional distress in that she suffered a loss of trust in school officials and felt betrayed that she did not learn what her child had experienced at the time of the injuries when she could have responded immediately with appropriate parental support and care.

21.     Prior to May 20, 2014, Ms. ZUCCARO was unaware that her daughter was being subjected to abuse and/or neglect or that the MUSD was aware of the abuse but was failing to report it and prevent it.

22.     The Martinez Police Department (MPD) investigated the May 19, 2014 incident. Bonnie Church, the bus driver, heard S.G. cry out in pain as she was being "escorted" by her teacher to the bus while grabbing her left arm.  She heard S.G. tell DOMBROWSKI that she was hurting her arm.  Ms. Church also stated that DOMBROWSKI was S.G.'s teacher for a long time and was fully aware of her physical limitations.  Once on the bus, S.G. continued to cry and complain of pain in her arm where DOMBROWSKI had grabbed her.

23.     Plaintiffs are informed and believe, and thereon allege, that none of the parents whose children were in DOMBROWSKI's class were told why she was put on administrative leave.

24.     The abuse suffered by S.G. caused her to regress in several areas of development. She has had a significant decline in health and behavior.  Socially and emotionally, S.G. had become like an 18-month-old to two-year-old child.  She was completely potty trained at 4 1/2 years old, and now is incontinent.  S.G. has also gained a lot of weight and constantly feels as if she were starving, no matter how much she ate.  Her cognitive abilities had declined to a point where Ms. ZUCCARO became really scared for her daughter.  S.G.'s seizures also increased

1   dramatically.  These behavioral changes, and decline in health, will cause permanent damage to her

2   ability to function in academic and social settings and will negatively impact ability to form

3   relationships.

4         25.      Now that S.G. has returned to school, Ms. ZUCCARO is getting calls to come and

5   pick her up from school, because the staff is unable to de-escalate her and she is being very

6   physically aggressive.  S.G. has also developed Pica which is putting her at more risk (individuals

7   suffering from Pica attempt to eat inedible objects, which can include dangerous substances, like

8   batteries or needles, or lead poisoning/brain damage if the individual ingests paint containing lead).

9   Plaintiffs are looking at alternate classroom placements for S.G., but it is going very slowly.  She is

10   having more and more rage and acting out.

11   **B.**      **Conduct of Individual Defendants**

12         **i.**      **Defendant DOMBROWSKI**

13         26.      Upon information and belief, Defendant DOMBROWSKI personally physically,

14   emotionally and verbally abused S.G. on numerous occasions.

15         27.      On at least one occasion, DOMBROWSKI forcefully dragged S.G. to the bus by

16   her arm, while S.G. was struggling to keep up and crying out in pain that DOMBROWSKI was

17   hurting her. DOMBROWSKI in turn acknowledged that she was hurting S.G. because S.G., a 4

18   year old, physically and developmentally disabled student, had been "mean to her."

19         **ii.**      **Defendant ROBERTSON**

20         28.      Defendant ROBERTSON was responsible for the hiring, training and supervision of

21   School District staff at MEIPP and ensuring compliance with state and federal laws.

22         29.      On information and belief, DOMBROWSKI's abuse conduct was open and obvious

23   and should have been apparent to other employees of MUSD.

24         30.      On information and belief, Defendants, and each of them, did not report suspected

25   child abuse immediately upon learning about it.

26         31.      Defendant ROBERTSON failed to notify Ms. ZUCCARO of the abuse her daughter

27   suffered at the hands of S.G.  On information and belief, Plaintiffs allege that ROBERTSON and

28   other MUSD employees knew that S.G. was being abused by DOMBROWSKI even prior to the

May 19, 2014 incident and concealed this information from ZUCCARO, and the later discovery of what her daughter went through caused ZUCCARO severe emotional distress.

32.     ROBERTSON was also a mandated reporter pursuant to Penal Code §§ 11165 *et seq.* On information and belief, ROBERTSON failed in his responsibility to report child abuse to the appropriate agency.

33.     Plaintiffs allege, on information and belief, that Defendant ROBERTSON became aware of the abuse inflicted upon S.G., yet he failed to discipline or terminate DOMBROWSKI even after the May 19, 2014 incident, instead finding that she "did not intend to hurt" S.G. and not including a written reprimand in her personnel file.

### iii.     Defendant Does 1-20

34.     Defendants Does 1-10 either personally participated in the physical and verbal abuse of S.G. or observed the abuse and were in a position to prevent it or report it to District officials and law enforcement. Defendant Does 1-10 did not prevent the abuse nor did they report the abuse as required by law. Defendants Does 1-10 also failed to report the abusive conditions to ZUCCARO so that she could provide appropriate support and care to S.G.

35.     Defendant Does 11-20 became aware of the abusive conditions in the classroom and did not report the abuse to law enforcement. Defendant Does 11-20 also failed to report the abusive conditions to ZUCCARO so that she could provide appropriate support and care to S.G.

### FIRST CLAIM FOR RELIEF

**(Violation of Constitutional Rights, 42 U.S.C. § 1983; All Plaintiffs vs. Dombrowski, Robertson, and Does 1-20)**

Plaintiffs refer to, and incorporate herein by reference, all the preceding paragraphs as though fully stated.

36.     Defendant DOMBROWSKI violated S.G.'s rights under the Fourth Amendment to the United States Constitution by actions, including, but not limited to, utilizing unjustified and unreasonable force against her and restraining her. This conduct includes, but is not limited to, grabbing S.G. by the arm and pulling her at a pace that Defendant knew was causing S.G. pain.

37.       Defendant ROBERTSON violated S.G.'s rights under the Fourth Amendment to the United States Constitution by actions including, but not limited to, acting with deliberate indifference to the risk of harm to the minor Plaintiff from DOMBROWSKI.  On information and belief, Plaintiffs allege that Defendant ROBERTSON personally participated in the deprivation of S.G.'s constitutional rights by his failure to act in response to allegations of serious child abuse, and his deliberate indifference to the fact that abuse was occurring.

38.       DOMBROWSKI's conduct in subjecting S.G. to verbal and physical abuse violated her rights under the due process clause of the Fourteenth Amendment.

39.       Defendants DOMBROWSKI and ROBERTSON violated Plaintiffs' rights under the Due Process Clause to the Fourteenth Amendment to the United States Constitution by action including, but not limited to:

a. Intentionally interfering with the parent-child relationship by concealing information regarding the physical and emotional trauma inflicted on S.G. by DOMBROSKI.  The negative impact has been severe; interference is ongoing and is likely to last many years.  The fundamental element of the parent-child relationship is trust.  Children trust their parents, but due to the abuse inflicted by DOMBROWSKI, S.G. has lost trust in her parents, and this bond is now damaged, perhaps irreparably so.  Because of her age and disabilities, S.G. believes that their parents were aware of the abusive conditions in the classroom and that her parents knowingly subjected her to the abuse, sending her to school every day.  As a result, the trust necessary for a healthy parent-child relationship has been severely undermined and will impede the parents' ability to provide guidance and direction to their child.

b. In addition, S.G. has reacted to the trauma she endured by exhibiting behavioral symptoms including aggression, rage, anxiety, and hypervigilance that have interfered and will continue to interfere with the parents' ability to maintain an emotional bond with their child.  S.G. has also become more aggressive toward her parents and other members of the family, which interferes with the cohesion and intimacy of the familial relationship.

c. Intentionally interfering with Plaintiffs' right to provide and receive nurture, support, and comfort regarding highly traumatic events.  Defendants caused or were deliberately

indifferent to the abusive conditions in the classroom and then misled or failed to inform the parents as to the cause of severe behavioral changes in S.G. As a result, STEPHANIE ZUCCARO was deprived of the ability to direct appropriate guidance, comfort and therapies to address the trauma her child was suffering.

40. As a proximate result of the violations alleged hereinabove, Plaintiffs have suffered damages as heretofore alleged.

**SECOND CLAIM FOR RELIEF**

**(Discrimination in Violation of the Americans with Disabilities Act; S.G. vs. MUSD)**

41. Plaintiffs refer to, and incorporate herein by reference, all the preceding paragraphs as though fully stated.

42. Effective January 26, 1992, S.G. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201 of the ADA.

43. Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. S.G. was, at all times relevant herein, a qualified individual with a disability as therein defined.

44. MUSD has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

45. MUSD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting plaintiff S.G. to a hostile educational environment. DOMBROWSKI's actions were clearly motivated by an obvious animus toward the disabled minor S.G., who was verbal despite

her physical disabilities.  On information and belief, Plaintiffs allege that DOMBROWSKI only wanted non-verbal children in her class, and abused S.G. because she was verbal.  She directed disability-related epithets toward S.G., denigrating their intelligence and disabilities.  S.G. was in a state of constant fear that DOMBROWSKI would abuse her or her classmates.  Children without disabilities at MUSD were not subjected to abusive classroom conditions as was S.G.

46.     Defendant ROBERTSON was deliberately indifferent to the complaints of abuse committed by DOMBROWSKI. DOMBROWSKI was also deliberately indifferent because she knew she was hurting S.G.  On information and belief, Plaintiffs allege that he had received numerous reports of the conditions of the classroom from the aides and the parents knew the abuse was likely to continue, yet failed to act upon it.  This deliberate indifference by its employees gives rise to respondeat superior liability on the part of MUSD.

47.     As a result of MUSD's failure to comply with its duty under Title II, S.G. has suffered damages including special and general damages according to proof.

### THIRD CLAIM FOR RELIEF

### (Violation of § 504 of the Rehabilitation Act of 1973; Plaintiffs S.G. v. MUSD)

48.     Plaintiffs refer to, and incorporate herein by reference, all the preceding paragraphs as though fully stated.

49.     S.G. is informed and believes, and thereon alleges, that MUSD is and has been at all relevant times the recipient of federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

50.     By their actions or inactions in denying equal access to educational services and by subjecting S.G. to a hostile educational environment, defendant has violated her rights under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder.

51.     MUSD is vicariously liable for the actions or inactions of its employees.  Defendant ROBERTSON was deliberately indifferent to the abuse committed by DOMBROWSKI.  On information and belief, S.G. alleges that had actual knowledge of the hostile conditions in the

classroom, knew that DOMBROWSKI was likely to continue abusing the disabled children, but did nothing to prevent it.  Furthermore, he failed to include a letter of discipline in DOMBROWSKI's personnel file, which allowed her to teach in a different district.

52.    As a result of MUSD's failure to comply with its duty under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder, S.G. has suffered damages including special and general damages according to proof.

## JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    Compensatory damages to Plaintiffs for injury, emotional distress and for medical expenses;

2.    Punitive damages against Defendants DOMBROWSKI and ROBERTSON;

3.    Attorney's fees and costs; and

4.    Such other and further relief as the court deems just and proper.

Dated:      May 17, 2016

_____/s/ Todd Boley_____
TODD BOLEY
Attorney for Plaintiffs