1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                    NORTHERN DISTRICT OF CALIFORNIA

6

7    STEPHANIE ZUCCARO, et al.,                    Case No.16-cv-02709-EDL

8                   Plaintiffs,

9            v.                                    **ORDER GRANTING IN PART AND**
                                                   **DENYING IN PART MOTION TO**
10   MARTINEZ UNIFIED SCHOOL                       **DISMISS**
     DISTRICT, et al.,
                                                   Re: Dkt. No. 15
11                  Defendants.

12

13   **I.      Introduction**

14           Plaintiff Stephanie Zuccaro, on behalf of herself and as guardian ad litem for her special

15   needs preschool-aged daughter, S.G., has brought suit against the Martinez Unified School District

16   ("MUSD"), MUSD Assistant Superintendent David Robertson, and special education teacher

17   Louise Dombrowski based on alleged abuse of A.G. by her teachers.  The amended complaint

18   ("FAC") asserts the following claims: (1) violation of 42 U.S.C. § 1983 by all plaintiffs against

     Ms. Dombrowski and Mr. Robertson; (2) discrimination in violation of the Americans With
19
     Disabilities Act ("ADA") by S.G. against MUSD; (3) violation of §504 of the Rehabilitation Act
20
     by S.G. against MUSD; (4) intentional infliction of emotional distress ("IIED") by all plaintiffs
21
     against all defendants; (5) violation of the Unruh Civil Rights Act by S.G. against all defendants;
22
     (6) violation of California Education Code § 200 by S.G. against MUSD; (7) battery by S.G.
23
     against Ms. Dombrowski; (8) negligence by all plaintiffs against all defendants; (9) negligent
24
     supervision by S.G. against all defendants; and (10) violation of mandatory reporting duty by S.G.
25
     against all defendants.  See Dkt. No. 10.  Ms. Dombrowsi answered the complaint.  See Dkt. No.
26
     17.
27
             Defendants MUSD and Mr. Robertson filed a motion to dismiss certain of the claims
28

United States District Court
Northern District of California

against them for failure to state a claim.  The Court held a hearing on the motion to dismiss on September 20, 2016.  For the reasons stated during the hearing and as follows, the motion is granted in part and denied in part.  Plaintiffs shall file an amended complaint within two weeks of the date of this order.

**II.     Factual Background**

Plaintiff S.G. was a four year old special education student in the MUSD and assigned to Ms. Dombrowski's preschool special education classroom in the Martinez Early Intervention Preschool Program ("MEIPP") for the 2013-2014 school year.  See Dkt. No. 10 (FAC) ¶¶ 2, 11, 16.  Plaintiff Stephanie Zuccaro is S.G.'s mother and brings this action on her own behalf and as guardian ad litem for S.G.  Id. ¶ 1.  Mr. Robertson was the Assistant Superintendent of MUSD during the relevant time period.  Id. ¶ 4.  Plaintiffs allege that during the 2013-2014 school year, Plaintiff was subjected to physical, psychological and verbal abuse by Ms. Dombrowski and two aides.  Id. ¶ 12.  The abuse included aides frequently hitting S.G. and the teacher forcefully and painfully dragging S.G when her physical disability prevented S.G. from moving as quickly as the teacher would have liked.  Id.  S.G's behavior deteriorated dramatically during this time.  Id. ¶ 13.  She resisted going to school, complaining of stomachaches in order to stay home, and displayed uncharacteristic anger, anxiety and stress.  Id.  Ms. Zuccaro was concerned about these changes, but S.G.'s special needs prohibited her from articulating the causes of her distress to her mother.  Id. ¶ 15.  Prior to May 20, 2014, S.G.'s parents had no reason to believe that her behavioral changes were the result of abuse suffered at school.  Id.

On or about May 20, 2014, Ms. Zuccaro received an email from another parent describing an event she witnessed on May 19, 2014 in which Ms. Dombrowski dragged S.G. by the arm to the bus while S.G. struggled to keep up due to her limited mobility and inability to use the right side of her body, crying: "You are hurting me! You are being mean!"  Id. ¶ 16.  Ms. Dombrowski allegedly replied: "Yes, I am being mean because you were mean to me."  Id. ¶ 16; see also ¶ 27. The email further stated that this incident was not the first time the other parent has observed Ms. Dombrowski mishandle S.G., and that she wished she had notified the District sooner.  Id.   The other parent also reported that she had overheard S.G. being called a "bad girl" by Ms.

2

Dombrowski or other school personnel.  Id.  The other parent also sent an email to school administrators describing what she saw.  Id.  Ms. Zuccaro stopped sending S.G. to school upon learning of the May 19, 2014 incident.  Id. ¶ 16.  Prior to May 20, 2014, Ms. Zuccaro was unaware that her daughter was being subjected to abuse or neglect or that the MUSD was aware of the abuse but was failing to report it and prevent it.  Id. ¶ 21.

After learning of the alleged abuse, MUSD put Ms. Dombrowski on administrative leave. Id. ¶ 17.  Plaintiffs allege on information and belief that none of the parents of children in Ms. Dombrowski's class were told why she was put on administrative leave.  Id. ¶ 23. Ms. Dombrowski admitted that she was walking too fast for S.G. given her mobility impairment, but MUSD determined that Ms. Dombrowski did not intend to hurt S.G. and allowed her to return to the classroom on June 4, 2014 before the Martinez Police Department finished their investigation. Id. at ¶¶ 16-17.  MUSD issued a memorandum to Ms. Dombrowski on June 3, 2014, which instructed her to "refrain from negative verbal interactions with students, be aware of students' disabilities and to provide appropriate support, to escort students at a pace that is less than or meets the minimum of their physical restrictions, and to work with staff to maintain visual contact of all students at all times," and that if a child said that she was hurt, Ms. Dombrowski should stop and adjust her actions immediately to determine appropriate response and actions.  Id. ¶ 18. However, no written reprimand was put into her personnel file, and it is unclear whether MUSD took disciplinary action against her.  Id. ¶ 17.  Plaintiffs allege on information and belief that Ms. Dombrowski went on to teach in Lodi, California, and "neither parents nor administrators there were aware of the allegations against her due to [Defendants'] failure to properly include the letter of the findings of their investigation in her file."  Id. ¶ 19.

The Martinez Police Department investigated the May 19, 2014 incident.  A bus driver reported that she heard S.G. cry out in pain as she was being escorted by her teacher to the bus while grabbing her left arm.  Id. ¶ 22.  The bus driver heard S.G. tell Ms. Dombrowski that she was hurting her arm.  Id.  The bus driver also stated that Ms. Dombrowski was S.G.'s teacher for a long time and was fully aware of her physical limitations.  Id.  On the bus, S.G. continued to cry and complain of pain in her arm where Ms. Dombrowski grabbed her.  Id.

As a result of the alleged abuse, S.G. experienced serious emotional distress and suffering and regressed in several areas of social and emotional development and had a significant decline in health and behavior.  Id. ¶¶ 20, 24, 25.   MUSD's alleged failure to advise Ms. Zuccaro of the abuse of S.G. caused her to suffer extreme emotional distress in that she suffered a loss of trust in school officials and felt betrayed that she did not learn what her child had experienced at the time of the injuries when she could have responded immediately with appropriate parental support and care.  Id.

Plaintiff alleges that Mr. Robertson was responsible for hiring, training and supervising staff at MEIPP and ensuring compliance with state and federal laws.  FAC ¶ 28.  Plaintiffs further allege that Ms. Dombrowski's "abuse conduct was open and obvious and should have been apparent to other employees of MUSD," and Mr. Robertson and other MUSD employees knew that S.G. was being abused by Ms. Dombrowski prior to the May 19, 2014 incident but concealed this information from Ms. Zuccaro.  FAC ¶ 29-31.  The delayed discovery of what S.G. went through caused Ms. Zuccaro severe emotional distress.  Id. ¶ 31.

Plaintiffs allege on information and belief that Mr. Robertson was a mandated reporter pursuant to Penal Code §§ 11165 *et seq.*, but did not report suspected child abuse immediately upon learning about it.  Id. ¶¶ 30, 32.  Plaintiffs further allege, on information and belief, that Mr. Robertson became aware of the abuse inflicted upon S.G. but failed to discipline or terminate Ms. Dombrowski even after the May 19, 2014 incident, instead finding that she "did not intend to hurt" S.G. and not including a written reprimand in her personnel file.  Id. ¶ 33.

Plaintiffs filed their initial complaint against Defendants in California State Superior Court on May 29, 2015 and filed an amended complaint in state court on July 24, 2015.  Plaintiffs filed their initial complaint in federal court on May 19, 2016. The parties agreed to consolidate Plaintiffs' claims and on June 29, 2016 Plaintiffs filed their First Amended Complaint in this Court asserting all claims against all defendants.  See Dkt. No. 10.

### III.     Legal Standard

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The reviewing

court's "inquiry is limited to the allegations in the complaint, which are accepted as true and

construed in the light most favorable to the plaintiff." <u>Lazy Y Ranch LTD v. Behrens</u>, 546 F.3d

580, 588 (9th Cir. 2008). A court need not, however, accept as true the complaint's "legal

conclusions." <u>Iqbal</u>, 556 U.S. at 678. "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." <u>Id</u>. at 679. Thus, a reviewing court may

begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to

the assumption of truth." <u>Id</u>. Furthermore, a court also need not "accept as true allegations that

contradict matters properly subject to judicial notice." <u>Sprewell v. Golden State Warriors</u>, 266

F.3d 979, 988 (9th Cir. 2001).

## IV.    Request for Judicial Notice

    In support of their motion to dismiss, Defendants have filed a request for judicial notice of

two documents.  On a motion to dismiss, a court normally may not look to matters beyond the

complaint without converting the motion into one for summary judgment. <u>See Mack v. South Bay

Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by <u>AstoriaFed.

Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991). There are two exceptions to this rule: (1) a

court may take judicial notice of material which is either submitted as part of the complaint or

necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of

public record. <u>See Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). Under

Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable

dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court;

or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned."  Furthermore, a court "shall take judicial notice if requested by a party

and supplied with the necessary information." <u>See</u> Fed. R. Evid. 201(d); <u>Mullis v. United States

Bank</u>, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).  However, a court may not take judicial notice of a

fact that is "subject to reasonable dispute." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689–90 (9th

Cir. 2001) (quoting Fed.R.Evid. 201(b)) (finding that trial court erred in taking judicial notice of

disputed facts contained in public records because, while the court could take judicial notice of the

existence of the another court's opinion which was not subject to reasonable dispute over its authenticity, judicial notice was improper "for the truth of the facts recited therein").

### A.    Plaintiff's Discovery Response

Defendants first request that the Court take judicial notice of Ms. Zuccaro's response to a contention interrogatory dated October 5, 2015, sworn under penalty of perjury and served in the earlier state court action, in which Defendants asked for "each date upon which [Ms. Zuccaro] contend[s] S.G. was subjected to any abuse by any employee of" MUSD.  See Dkt. No. 15-1 at 7. In response to this interrogatory, Ms. Zuccaro stated that, as of October 5, 2015 (the date of the responses), she was "only aware of one occasion at this time, when S.G. was dragged to the bus" by Ms. Dombrowski but that "[o]n information and belief, Plaintiff has alleged that there have been prior instances of inappropriate physical contact" and that "S.G. has reported to Plaintiff that [classroom aides] hit her."  See Dkt. No. 15-1 at 11-12.  Defendants argue that the Court should take judicial notice of this discovery response as an admission under oath that the only abuse of S.G. that Ms. Zuccaro is aware of occurred on May 19, 2014.  As discussed below, Defendants rely on this response to argue that Plaintiffs' allegations that Mr. Robertson had knowledge of abuse of S.G. before May 19, 2014 are implausible in light of Plaintiff's own admission that she is unaware of any other instances of abuse, coupled with Plaintiff's allegation that the other parent who wrote the email to Ms. Zuccaro about the May 19, 2014 incident lamented not reporting abuse of S.G. earlier.  See FAC ¶ 16 (other parent "wished she had notified the District sooner").

Plaintiffs counter that the request for judicial notice should be denied and Ms. Zuccaro's discovery response should not be considered for the truth of the facts contained therein because the discovery response is not a public record, and the matters asserted therein are not indisputable. Specifically, they argue that Ms. Zuccaro's discovery response is "extra-record evidence representing Plaintiff Zuccaro's knowledge of the factual basis for an assertion made in a separate court proceeding at an early point of the proceedings" prior to filing the federal complaint and "the proper interpretation of the response and whether it conflicts with the allegations of the federal complaint is in dispute."  Opp. at 6-7.  Substantively, Plaintiffs also argue that the October 5, 2015 discovery response stating that Ms. Zuccaro was only aware of one occasion of abuse (the May 19,

2014 incident of dragging S.G. to the bus) --but also alleging on information and belief that there were prior instances of inappropriate physical contact, as well as S.G.'s report that teacher's aides hit her -- do not actually contradict the allegations in the FAC that Mr. Robertson knew or should have known of the alleged prior abuse of S.G.

Generally, "discovery items such as requests for discovery and responses to requests for discovery are not proper subjects for judicial notice because they are not 'self-authenticating' and thus cannot be verified." See United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc., 145 F. Supp. 3d 932, 942 (C.D. Cal. 2015), reconsideration denied, 2016 WL 2885848 (C.D. Cal. May 17, 2016) (citing Garber v. Heilman, 2009 WL 409957, at *2 (C.D.Cal. Feb. 18, 2009); Garber v. Flores, 2009 WL 1649727, at *1 (C.D.Cal. June 10, 2009)). The Court declines to take judicial notice of Plaintiff's discovery response or the underlying facts asserted therein because these are not the type of "readily known" facts that are the proper subject of judicial notice. Moreover, the discovery response in question contains sufficient qualifiers that, even if it were taken as true, it does not directly contradict other allegations in the FAC about Mr. Robertson's knowledge of other incidents. Even if Ms. Zuccaro, a parent, did not know of other instances of abuse of S.G., that does not necessarily mean that Mr. Robertson, a school official, was unaware of other instances of abuse prior to May 19, 2014. Therefore, even if considered, the response is not an admission that precludes the allegations in the complaint.

**B.      Police Report**

Defendants request that the Court take judicial notice of a Martinez Police Department report dated May 22, 2014 describing the May 19 incident involving Ms. Dombrowski allegedly dragging S.G. to the bus as a public record. Defendants point out that the police report is a business record subject to a hearsay exception. See Fed. R. Evid. 803(6). They further contend that Plaintiffs produced the document in discovery and therefore cannot reasonably question its authenticity. The report states, among other things, that Mr. Robertson contacted Child and Family Services and a Suspected Child Abuse report was filled out. See Dkt. No. 15-1 at 17. The report also states that the bus driver informed Ms. Zuccaro of the incident when she dropped S.G. off on May 19, 2014. Id. at 18. Defendants rely on this document to support their position that

United States District Court
Northern District of California

7

1   Mr. Robertson reported suspected abuse as soon as he found out about it on May 19, and therefore

2   Plaintiff's allegations that Mr. Robertson had knowledge of any abuse before May 19 are

3   implausible.

4        Plaintiffs do not dispute that the report itself is a public record for which judicial notice

5   might otherwise be appropriate, but argued in their opposition papers that the Court should not

6   take judicial notice of disputed facts contained in the police report because they are subject to

7   reasonable dispute between the parties in this case.   When parties dispute the facts contained in a

8   police report, courts within the Ninth Circuit will generally decline to take judicial notice.  As one

9   court declining to take judicial notice of the contents of a police report explained:

> Although some records of a state agency are the proper subject of judicial notice, a
> district court "may not take judicial notice of documents filed with an
> administrative agency to prove the truth of the contents of the documents."
> Benavides v. City of Arvin, No. 12–cv–0405, 2012 WL 1910259, at *3 (E.D.Cal.
> May 25, 2012) (citing, inter alia, M/V Am. Queen v. San Diego Marine Constr.
> Corp., 708 F.2d 1483, 1492 (9th Cir.1983)); Klein v. Freedom Strategic Partners,
> 595 F.Supp.2d 1152, 1157 (D.Nev.2009) ("When a court takes judicial notice of a
> public record, 'it may do so not for the truth of the facts recited therein, but for the
> existence of the [record], which is not subject to reasonable dispute over its
> authenticity.' " (quoting Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir.2001))). *2
> In Benavides, for example, the defendants asked the court to take judicial notice of,
> among other things, the contents of a police report. 2012 WL 1910259, at *2. The
> Benavides court declined to take judicial notice of the contents of the police report,
> because the contents were not the proper subject of judicial notice, and because
> "the allegedly indisputable facts contained in the police report ... are subject to
> hearsay objections, and do not rise to the 'high degree of indisputability' required
> for judicial notice for their truth." Id. at *3 (citation omitted). Similarly, in Ritchie,
> the Ninth Circuit explained that not all records obtained from an administrative
> body fit within the judicial notice exception, noting "that the existence and content
> of a police report are not properly the subject of judicial notice." 342 F.3d at 909
> (citing Pina v. Henderson, 752 F.2d 47, 50 (2d Cir.1985)).

22   Kennedy v. Cent. City Concern, , 2016 WL 1047890, at *1–2 (D. Or. Feb. 18, 2016), 2016 WL

23   1045524 (D. Or. Mar. 15, 2016); see also Knighten v. City of Anderson, 2016 WL 1268114, at *5

24   (E.D. Cal. Mar. 31, 2016) (refusing to take judicial notice of police report and facts contained in

25   the report because they were subject to reasonable dispute between the parties).  However, courts

26   routinely take judicial notice of police reports where the requests are unopposed and the factual

27   matter contained therein is undisputed.  See, e.g., Sturgis v. Brady, 2016 WL 924859, at *4 (N.D.

28   Cal. Mar. 11, 2016) (taking judicial notice of a police report where the request was unopposed

*United States District Court*
*Northern District of California*

because the record was not subject to reasonable dispute); Palmer v. Savona, 2013 WL 4478945, at *5 (D. Ariz. Aug. 21, 2013) ("Plaintiff provided this police report to the court as an attachment. The Court takes judicial notice of this police report as a public record."); Kaur v. Singh, 2014 WL 2208114, at *3 (E.D. Cal. May 28, 2014) (noting that "generally a court may decline to take judicial notice of a police report" but taking judicial notice of a police report because the plaintiff did not dispute the facts contained therein).

When questioned during oral argument about what facts contained in the police report they actually dispute, Plaintiffs could not identify any specific factual dispute and withdrew their opposition to judicial notice of it. In particular, they did not dispute the truth of the fact contained in the police report that Mr. Robertson reported suspected abuse to Child and Family Services after the May 19 incident. Because there is no actual dispute as to the contents of the police report in question and judicial notice is now unopposed, the Court will consider it for purposes of this motion to the extent that it is relevant to the issues currently before the Court.

V.    Discussion

A.    Mr. Robertson's 11th Amendment Immunity

The Eleventh Amendment to the United States Constitution provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995) (citing Durning v. Citibank, NA., 950 F.2d 1419, 1422-23 (9th Cir. 1991)). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (internal citations omitted)). Thus, the Eleventh Amendment precludes a district court from asserting jurisdiction over claims against state officials sued in their official capacities. See Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1988); Garnica v. Washington Dep't of Corr., 965 F. Supp. 2d 1250, 1268. (W.D. Wash 2013) ("[A] suit against a state official in his or her official capacity

is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

"In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)  "In determining whether a section 1983 claim may lie against a state official," courts analyze "the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." Hafer v. Melo, 502 U.S. 21, 26 (1991).

Defendants argue that Mr. Robertson has been sued in his official capacity as Assistant Superintendent of MUSD, and therefore he is entitled to Eleventh Amendment immunity as an arm of the state.  Defendants rely on McAllister v. Los Angeles Unified Sch. Dist., 216 Cal. App. 4th 1198, 1208 (2013), a case in which the California Court of Appeals addressed the issue of whether a suit against a school official was in an official or individual capacity.   The court analyzed the language of the complaint, and focused in particular on the facts that the caption of the complaint listed the title of the school official in question, and the allegations specific to the school official related to his official duties regarding customs and policies and alleged that he was acting within the scope of his employment. Id.  The court concluded that the language of the complaint left no question that the school official was sued in his official, rather than individual, capacity. Id.

Defendants argue that similarly here, the FAC is clear that Mr. Robertson's actions fell within his responsibilities as Assistant Superintendent (see FAC ¶¶ 4, 17-19, 30, 31, 33) and that his actions were "taken under color of state law and in the course and scope of his employment with MUSD" (FAC ¶ 4).  Plaintiffs counter that Mr. Robertson has been sued in his individual capacity, relying on their allegation that "Robertson personally participated in the deprivation of S.G.'s constitutional rights . . ."  See FAC ¶ 37.

Defendants respond that the allegations of individual action are a "mere pleading device" and Mr. Robertson's actions of putting Ms. Dombrowski on leave, notifying the police, investigating, and deciding to give a written warning and allow her to return to work were taken in

his official capacity, whereas he is not alleged to have personally participated in any abuse.

Defendants argue in essence that because he was acting within the scope of his employment, he

can *only* be liable in an official capacity.  The Supreme Court rejected this argument in <u>Hafer v.</u>

<u>Melo</u>, 502 U.S. 21, 24 (1991), which "address[ed] the question [of] whether state officers may be

held personally liable for damages under § 1983 based upon actions taken in their official

capacities":

> [Petitioner] seeks to overcome the distinction between official- and personal-capacity suits by arguing that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff. . . . [S]he asserts [that] state officials may not be held liable in their personal capacity for actions they take in their official capacity. . . .
>
> The distinction [petitioner] urges finds no support in the broad language of § 1983. To the contrary, it ignores our holding that Congress enacted § 1983 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' . . . Furthermore, [petitioner's] distinction cannot be reconciled with our decisions regarding immunity of government officers otherwise personally liable for acts done in the course of their official duties.  Her theory would absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities. Yet our cases do not extend absolute immunity to all officers who engage in necessary official acts. . . .
>
> We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.

Id. at 27-29, 31.

Further, there is a presumption that officials are sued in their personal capacities where

they are named in a complaint, even if the complaint does not specify that they have been sued in

their individual capacity.  <u>See Romano v. Bible</u>, 169 F.3d 1182, 1186 (9th Cir. 1999) (courts

should "presume[ ] that officials necessarily are sued in their personal capacities where those

officials are named in a complaint, even if the complaint does not explicitly mention the capacity

in which they are sued").  Defendants have not overcome the presumption that Plaintiff intended

to sue Mr. Robertson in his individual capacity.  Therefore, Eleventh Amendment is not an

absolute bar to the §1983 claim against him.

**B.      The §1983 Claim Against Mr. Robertson**

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants alternatively argue that Plaintiffs' §1983 claim against Mr. Robertson should

2    be dismissed because there are no plausible allegations of his deliberate indifference because the

3    allegations that Mr. Robertson knew of prior abuse of S.G. and took no action are overly

4    conclusory.  They argue that allegations that he was responsible for hiring, training and

5    supervising staff, that Ms. Dombrowski's conduct was open and obvious, that Mr. Robertson did

6    not immediately report suspected child abuse, and that he failed to report the abuse to Ms.

7    Zuccaro, even when viewed together, are insufficient.  See FAC ¶¶ 28-32.

8    For this position, Defendants rely in part on Ms. Zuccaro's discovery response that they

9    sought to introduce through a request for judicial notice.  However, for the reasons stated above

10   the Court will not take judicial notice of that document and even if the Court were to consider this

11   discovery response, it does not directly conflict with the allegations of the FAC.  Defendants also

12   rely on Plaintiff's allegation that the other parent who sent Ms. Zuccaro an email about the May 19

13   incident stated that she regretted not telling the District about other incidents of alleged abuse she

14   witnessed earlier.  See FAC ¶ 16.  Defendants contend that this shows that the only reasonable

15   inference, based on Mr. Robertson's actions following the May 19, 2014 incident -- where he

16   reported the incident, placed Ms. Dombrowski on leave, and investigated -- is that he had no prior

17   knowledge of any earlier incidents or he would have taken similar actions at that earlier time.

18   Thus, according to Defendants, he cannot have acted with deliberate indifference.

19   While the allegations regarding Mr. Robertson's knowledge of alleged abuse prior to May

20   19, 2014 are not detailed, considering the complaint as a whole and taking the allegations as true,

21   they are sufficient to nudge the §1983 claim over the line from possible to plausible.  This is

22   especially true in light of Plaintiffs' allegations that another parent reported to Plaintiffs that May

23   19 was not the first time she had observed Ms. Dombrowski mishandle S.G. and she had also

24   overheard S.G. being called names by Ms. Dombrowski and other school personnel.  See FAC ¶

25   16, 29-31.  The fact that such abuse was allegedly occurring more than once in front of another

26   parent supports an inference that the mistreatment was not an isolated incident and that other

27   employees, including Mr. Robertson, knew or should have known of the abuse earlier.  Further,

28   allegations that S.G.'s behavior and development significantly deteriorated during her time in Ms.

1    Dombrowski's class (FAC ¶ 13) also support an inference that May 19, 20-14 was the culmination

2    of a series of incidents of which Mr. Robertson should have been aware.

3          **C.      S.G.'s Claim For Intentional Infliction of Emotional Distress**

4          Defendants move to dismiss S.G.'s claim for intentional infliction of emotional distress

5    ("IIED") against both Mr. Robertson and MUSD because Mr. Robertson's alleged conduct was

6    not outrageous.  "The elements for a prima facie case of intentional infliction of emotional distress

7    are: (1) outrageous conduct by the defendant; (2) with the intention of causing, or reckless

8    disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or

9    extreme emotional distress; and (4) causation of the emotional distress by the defendant's

10   outrageous conduct."  Love v. Permanente Med. Grp., 2013 WL 1402890, at *4 (N.D. Cal. Apr. 5,

11   2013) (Rogers, J.).  "Conduct to be outrageous must be so extreme as to exceed all bounds of that

12   usually tolerated in a civilized community."  Davidson v. City of Westminster, 32 Cal. 3d 197,

13   209 (1982).  Because the outrageous conduct must be directed toward the plaintiff, the plaintiff

14   must generally be present at the time of the conduct, and the defendant must know that the

15   plaintiff is present.  Christensen v.Super. Ct., 54 Cal.3d 868, 905-06 (1991).

16         Mr. Robertson is not alleged to have been present at the time of any alleged abuse of S.G.,

17   and instead S.G.'s IIED claim against him is based on his failure to inform S.G.'s parents of the

18   alleged abuse and his decision to allow Ms. Dombrowski to continue teaching young special needs

19   children.  See FAC ¶¶ 55-58.  Defendants argue that the allegation of his failure to report the

20   abuse is contradicted by the police report which it states that he did report the alleged May 19,

21   2014 abuse.  Further, they point to allegations in the FAC that he did investigate the May 19, 2014

22   incident and gave Ms. Dombrowski a written warning.  FAC ¶ 16.

23         As discussed above, while Plaintiffs initially opposed judicial notice of the police report,

24   they conceded during oral argument that they do not dispute the fact that Mr. Robertson reported

25   suspected abuse following the May 19 incident.   Thus, to the extent that their IIED claim is based

26   on a failure to report the May 19 incident, it would fail.  However, Plaintiffs clarified that their

27   claims are based on the theory that Mr. Robertson knew of earlier abuse of S.G. but failed to

28   report it at that time.  The police report does not foreclose this theory or tend to make it

implausible.  S.G. may be able to show that Mr. Robertson acted outrageously if it is proven that

he knew that S.G., a four year old preschooler with special needs, was being abused by her

teachers prior to May 19, 2014 and concealed this information, thereby preventing her parents

from taking corrective actions earlier.  S.G.'s IIED claim will not be dismissed at the pleading

stage.

### D.    Ms. Zuccaro's Claim for Intentional Infliction of Emotional Distress

Defendants argue that, even if there are sufficient allegations of IIED by S.G., Ms. Zuccaro

lacks standing to assert an IIED claim because she did not witness the abuse as a bystander.  See

Thing v. La Chusa, 48 Cal. 3d 644, 647 (1989) ("In the absence of physical injury or impact to the

plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is

closely related to the injury victim, (2) is present at the scene of the injury-producing event at the

time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers

emotional distress beyond that which would be anticipated in a disinterested witness.").

Defendants contend that neither Ms. Zuccaro nor Mr. Robertson are alleged to have been present

during any abuse of S.G. but only learned of it later from others.  There is caselaw supporting

Defendants' position that an IIED claim cannot lie in such a situation.  See, e.g., Fernandez v.

United States, 2012 WL 202775, at *3–4 (S.D. Cal. Jan. 23, 2012) (dismissing parents' IIED

claim where they alleged emotional distress upon learning of border patrol agents' alleged harm to

son after the fact because they were not present for the harm).

However, Plaintiffs counter that Ms. Zuccaro's IIED claim is not based on bystander

liability, but on the fact that Mr. Robertson allegedly knew of abuse of S.G. but outrageously

failed to inform Ms. Zuccaro, which directly caused her severe emotional distress.  Once again,

Defendants respond that Plaintiffs' allegations of Mr. Robertson's prior knowledge of abuse are

implausible and the claim fails on this basis, but as discussed above the Court finds that Plaintiffs'

allegations are sufficient at the pleading stage to raise an inference of his prior knowledge.

Further, a school owes a duty of care not only to a student, but also to the student's parent.  See

Phyllis P. v. Superior Court, 183 Cal.App.3d 1193, 1196 (1986) (school owed mother a duty of

care when it did not report sexual assault of a girl to her mother).  Based on this duty, there is

14

1   authority to support Plaintiffs' position that a parent can state an IIED claim based on alleged

2   harm directly suffered by the parent as a result of a defendant's action or inaction regarding their

3   child.

4           In Phyllis P., a California Court of Appeals vacated a trial court order sustaining a school

5   district's demurrer to a mother's negligent and intentional emotional distress claims.  Id. There, a

6   school knew of sexual assaults on the child by another student but failed to notify her mother.  Id.

7   at 1195.  The mother argued that she suffered severe emotional distress as a result of the school's

8   failure to inform her of the assaults, because she was prevented from taking precautionary

9   measures to prevent a subsequent assault and had to witness the physiological and psychological

10  deterioration of her daughter as a result of the abuse.  Id.   The court rejected the school district's

11  argument that the emotional distress claims failed because the mother did not witness the assaults

12  so her injury was not clearly foreseeable.  Id. at 1197.  Instead, the court held that a special

13  relationship existed between the school and the mother such that the school had a duty to notify

14  her upon learning of the assault on her daughter.  Id. at 1196.  The court further held that the

15  school should have foreseen that a "cover up" would cause the mother "more emotional distress

16  than merely informing her of the incidents in the first place" and that this distress was

17  compounded when she learned of a subsequent assault that she felt could have been prevented.  Id.

18  at 1197.  The court found that emotional distress claims survived because, unlike in a bystander

19  liability case,  the mother was "asserting a cause of action as a direct victim of defendant's

20  negligent act, or failure to act, and not for injuries based upon her direct observation of the injury

21  to her daughter."  Id.  Similarly here, if Mr. Robertson knew S.G. was being abused prior to May

22  19 and failed to inform Ms. Zuccaro, thereby prohibiting Ms. Zuccaro from preventing subsequent

23  abuse of her daughter, the conduct (in this case an omission) was arguably intentionally directed to

24  Ms. Zuccaro and she was a direct victim of the harm and can state an IIED claim on her own

25  behalf.

26          **E.      The Unruh Act Claim**

27          California Civil Code § 51, the Unruh Act, provides that:

28          All persons within the jurisdiction of this state are free and equal, and no matter

United States District Court
Northern District of California

what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code § 52 provides for a private right of action for violation of the Unruh Act.

Defendants argue that MUSD (and Mr. Robertson in his official capacity) cannot be liable under the Unruh Act because the school district is not a "business establishment" as contemplated by the Unruh Act.  The California Supreme Court has not squarely answered the question of whether the Unruh Act applies to public schools, and authority on the issue is mixed.  While some federal district courts in California have held that public schools may qualify as "business establishments" in certain situations, recent California Court of Appeal cases on balance indicate that the California Supreme Court would not find the public school in the context presented here to be a business establishment.  Thus, for the following reasons Plaintiffs' Unruh Act claims are dismissed with prejudice.

In Isbister v. Boys' Club of Santa Cruz, Inc., 40 Cal. 3d 72, 76 (1985), the California Supreme Court addressed the question of whether the defendant, "a private charitable organization which operates a community recreational facility," qualifies as a "business establishment" under the Unruh Act.  The Court held that it does, reasoning that:

> By its use of the emphatic words "all" and "of every kind whatsoever," the Legislature intended that the phrase "business establishments" be interpreted "in the broadest sense reasonably possible." . . . Indeed, the Unruh Act was adopted out of concern that the courts were construing the 1897 public accommodations statute too strictly. . . .

> Courts in other jurisdictions have consistently held that broad-based nonprofit community service organizations like the Boys' Club are "public accommodations" covered by statutes analogous to California's pre-1959 civil rights law. . . . These principles and authorities persuade us that the Boys' Club of Santa Cruz is a "place of public accommodation or amusement," and thus a "business establishment" covered by the Act.

Id. at 78-81.  Following Ibister, a number of district court cases held that public schools were "business establishments" under the Unruh Act.  See, e.g., J.F. by Abel-Irby v. New Haven Unified Sch. Dist., 2014 WL 250431, at *6 (N.D. Cal. Jan. 22, 2014); Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1123 (E.D. Cal. 2011); D.K. ex rel. G.M. v. Solano Cty. Office

1   of Educ., 2008 WL 5114965, at *6 (E.D. Cal. Dec. 2, 2008); Sutta ex rel. Sutta v. Acalanes Union

2   High Sch. Dist., 2001 WL 1720616, at *4 (N.D. Cal. Oct. 3, 2001); Clark v. W. Contra Costa

3   Unified Sch. Dist., 2000 WL 336382, at *11 (N.D. Cal. Mar. 15, 2000); Nicole M. By & Through

4   Jacqueline M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369, 1388 (N.D. Cal. 1997); Doe By

5   & Through Doe v. Petaluma City Sch. Dist., 830 F. Supp. 1560, 1582 (N.D. Cal. 1993);  Sullivan

6   v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 952 (E.D. Cal. 1990).

7           However, in Curran v. Mount Diablo Council of the Boy Scouts, 17 Cal. 4th 670, 685

8   (1998), the California Supreme Court revisited the "business establishments" question and held

9   that the Boy Scouts' membership decisions are not subject to the Unruh Act:

> The [Ibister] court . . . found that the local Boys' Club at issue in that case constituted a business establishment within the meaning of the Act. In reaching this conclusion, the court explained that the origin and legislative history of the Unruh Civil Rights Act demonstrated that the Legislature, in enacting the Act in 1959, intended the new provision to cover at least all of the places of public accommodation or amusement that had been subject to the California public accommodation statute that preceded the Act. The court in Isbister then found that the attributes of the Boys' Club of Santa Cruz, Inc., demonstrated that it constituted a place of public amusement to which the statute was intended to apply.  The court reasoned that in view of its prominent recreational facilities, the club was plainly a "place of amusement" comparable to those traditionally covered by public accommodation statutes, and further explained that the club was "classically 'public' in its operation [because it] . . . opens its recreational doors to the entire youthful population of Santa Cruz, with the sole condition that its users be male.". . . [T]he court in Isbister pointed out, among other things, that a line of cases decided under title II of the federal Civil Rights Act of 1964 had reached a similar conclusion in finding a number of local recreational facilities owned and operated by local affiliates of the Young Men's Christian Association (YMCA) to be places of public accommodation and amusement and enjoining those entities from continuing their policy of discriminating against African–Americans in their membership decisions
>
> . . . .
>
> As we have seen, in Isbister the court made clear that the holding in that case was based upon the circumstance that the Boys' Club of Santa Cruz possessed the attributes of a traditional place of public amusement and that membership in the club was equivalent to admission to a place of public amusement, and expressly disavowed the suggestion that the ruling in that case compelled the conclusion that the Unruh Civil Rights Act applied to the membership decisions of scouting organizations or other groups that, while open to a broad

segment of the public, are not the functional equivalents of places of public accommodation or amusement. . . .  Plaintiff has cited no authority, and we are aware of none, that suggests an organization like the Boy Scouts would have been considered a place of public accommodation or amusement under California's earlier public accommodation law, and the majority of courts in other jurisdictions that have addressed the question whether membership in the Boy Scouts is covered by the particular jurisdiction's public accommodation statute have concluded that the Boy Scouts does not fall within the reach of their law. Accordingly, we conclude that neither the holding nor the reasoning of the decision in <u>Isbister</u> supports plaintiff's argument that defendant properly must be considered a business establishment whose membership decisions are subject to the Unruh Civil Rights Act.

<u>Id.</u> at 698-92.

Applying <u>Curran</u>, a California appellate court found that a private religious school is not a "business establishment" subject to the Unruh Act with respect to its membership decisions, using reasoning that has considerable relevance here:

<u>Curran</u> is controlling here. Just like the Boy Scouts, the School "is an expressive social organization whose primary function is the inculcation of values in its youth members." . . . Moreover, admission to the School, unlike membership in the Boy Scouts, is effectively selective and based on these values. As the Supreme Court noted, "the Boy Scouts is generally nonselective in its admission policies, and affords membership to a large segment of the public." . . . . [T]he School espouses specifically Lutheran values; it offers admission to Lutheran families and to other "families . . . who are in harmony with the policies and principles of our school."

*Although the fact that the School is nonprofit is not controlling, this does mean that it should not be deemed a business unless it has some significant resemblance to an ordinary for-profit business.* In our society, however, private elementary and secondary schools are overwhelmingly not-for-profit enterprises. Even such prestigious and well-endowed private schools as Groton and Phillips Exeter Academy are charitable organizations. . . . *And public schools, of course, are run on a nonprofit basis by the government.*

Moreover, as the trial court aptly noted, "[T]he complaint of Mary Roe and Jane Doe isn't that they were excluded from purchasing a sweatshirt or going to a football game, but their dismissal from the school [on the ground that they were in a lesbian relationship] goes to the very heart of the reason for the[ ] existence of the school. . . ." In <u>Curran</u>, the court recognized that the Boy Scouts could be a business, and hence be prohibited from discriminating, with respect to its nonmember transactions, yet *not* be a business, and hence *not* be prohibited from discriminating, with respect to its membership

18

1

> decisions. . . . The same is true of the School. . . .

2

> We emphasize the narrow scope of our holding. We hold only that
> the School established, beyond a triable issue of fact, that it is not a
> business establishment within the meaning of the Unruh Act.

3

4    Doe v. California Lutheran High Sch. Ass'n, 170 Cal. App. 4th 828, 838-41 (2009) (emphasis

5    added).

6           Plaintiffs contend that Doe is distinguishable as based more on the issue of membership

7    decisions of religious schools, rather than their non-profit status.  They contend that Doe and

8    Curran do not foreclose the possibility that a non-profit entity such as a public school might be

9    considered a business establishment even where it does not resemble an ordinary for-profit

10   business so long as it is the functional equivalent of a place of public accommodation.

11          The problems with Plaintiffs reasoning are twofold.  First, Doe applied Curran to conclude

12   that, "[a]lthough the fact that the School is nonprofit is not controlling, this does mean that it

13   should not be deemed a business unless it has some significant resemblance to an ordinary for-

14   profit business."  170 Cal. App. 4th at 840.  Thus, far from negating any requirement that the

15   entity at issue resemble an ordinary for-profit business, Doe confirmed the relevance of this

16   characteristic.  Second, the conduct at issue in this case, a public school's treatment of a special

17   needs preschool student, bears no significant resemblance to commercial business decisions.

18   Unlike, for example, a school selling football memorabilia, here Defendants were engaged in a

19   core public service to the community, the provision of a free, taxpayer-funded public education to

20   all, including those with special needs who require more expensive services, which is practically

21   the antithesis of a for-profit enterprise.

22          Two recent decisions of the California Court of Appeals support this conclusion.  In Carter

23   v. City of Los Angeles, 224 Cal. App. 4th 808 (2014), the court reasoned that the City of Los

24   Angeles, in its capacity of providing sidewalks and curbs to citizens, which might arguably be the

25   functional equivalent of a place of public accommodation, is not a "business establishment" under

26   the Unruh Act because:

27

> An organization has sufficient businesslike attributes to qualify as a
> business establishment when it "appears to have been operating in a
> capacity   that   is   the   functional   equivalent   of   a   commercial

28

United States District Court
Northern District of California

1
> enterprise." . . . We think a public entity providing sidewalks and curbs to its citizens does so as a public servant, not a commercial enterprise.

2

3   Id. at 825 (citing Warfield v. Peninsula Golf & Country Club, 10 Cal. 4th 594, 622 (1995)).  In

4   Gregory v. County of L.A., 2014 WL 6610198, at *4-5 (Cal. App. 2d Dist. Nov. 21, 2014), an

5   unpublished decision, the court held that a county animal shelter is not a "business establishment,"

6   rejecting the federal cases that extended the Unruh Act to public schools and reasoning instead

7   that:

8
> California courts interpreting this provision have focused on whether the organization at issue has sufficient businesslike attributes to qualify as a business establishment when it "appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise." (Warfield v. Peninsula Golf & Country Club (1995) 10 Cal. 4th 594, 622.) County animal shelters are not functionally equivalent to a commercial enterprise; they are local, governmental entities that serve a social purpose and are largely funded by the county. Their function is more analogous to a "public servant" rather than a commercial enterprise.

9

10

11

12

13

14   Id. at *4-5.  These California appellate cases support the conclusion that a public elementary

15   school, particularly in its capacity of providing a free education to a special needs preschooler, is

16   similarly acting as a public servant rather than a commercial enterprise and is therefore not subject

17   to the Unruh Act.

18   **F.      California Education Code Section 200 Claim**

19        Section 220 of the California Education Code states that:

20
> No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid.

21

22

23

24

25   Cal. Educ. Code § 220.  Further, section 201 specifies that "[i]t is the intent of the Legislature that

26   this chapter shall be interpreted as consistent with . . . Title IX."  Cal. Educ. Code § 201(g); see

27   also Donovan v. Poway Unified Sch. Dist., 167 Cal. App. 4th 567, 603 (2008) (following Title IX

28   jurisprudence in interpreting a section 220 claim); Garcia ex rel. Marin v. Clovis Unified Sch.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  Dist., 627 F. Supp. 2d 1187, 1195 n.3 (E.D. Cal. 2009) ("As the parties are in agreement that Title

2  IX standards apply, the Court will utilize Title IX standards to analyze [Plaintiff's] California

3  Education Code claims.").

4  Defendants argue that, consistent with Title IX, a plaintiff must plausibly allege that a

5  school official with the authority to take corrective action had actual notice of the alleged

6  harassment and acted with deliberate indifference.  See Gebser v. Lago Vista Indep. Sch. Dist.,

7  524 U.S. 274, 292-93 (1998) (sexual harassment case); see also Donovan, 167 Cal. App. 4th at

8  604 (citing Gebser approvingly).  As with several of the claims discussed above, Defendants argue

9  that there are insufficient allegations of prior notice or deliberate indifference.  However, for the

10  reasons previously stated, Plaintiffs' allegations are sufficiently plausible to support a claim of

11  deliberate indifference based on prior knowledge.

12  **G.      Negligence Claim**

13  **1.      Mr. Robertson's Duty to S.G.**

14  Defendants admit that there is a "duty of cared owed to the minor plaintiff."  Mot. at 15;

15  see also Hoyem v. Manhattan Beach City Sch. Dist., 22 Cal. 3d 508, 513 (1978) ("Although a

16  school district is not an insurer of its pupils' safety . . . our cases have long established that a

17  school district bears a legal duty to exercise reasonable care in supervising students in its charge

18  and may be held liable for injuries proximately caused by the failure to exercise such care.");

19  Virginia G. v. ABC Unified Sch. Dist., 15 Cal. App. 4th 1848, 1853 (1993) (noting that there is

20  "'a special relationship is formed between a school district and its students so as to impose an

21  affirmative duty on the district to take all reasonable steps to protect its students.' . . . Thus, the

22  [school] [d]istrict had a duty to protect [the plaintiff student] from assaults by her teacher . . . .").

23  Although Defendants argue that Plaintiffs' negligence claim against Mr. Robertson fails

24  because there are insufficient allegations that he knew of any abuse of S.G. prior to May 19, 2014

25  and failed to prevent it, for the reasons previously stated, Plaintiffs' allegations are sufficient to

26  support a claim based on Mr. Robertson's prior knowledge.

27  **2.      Mr. Robertson's Duty to Ms. Zuccaro**

28  Defendants also move to dismiss Ms. Zuccaro's negligence claim on the basis that they

owe no duty to parents based on alleged conduct aimed at the student.   However, as discussed above in connection with the IIED claim, Defendants had a duty to report suspected abuse of her child occurring in school custody to Ms. Zuccaro.  See, e.g., Doe v. Superior Court, 237 Cal. App. 4th 239, 248 (2015) (child's camp had duty to report suspected molestation to parents); Phyllis P. v. Superior Court, 183 Cal. App. 3d 1193, 1196, 228 Cal. Rptr. 776, 777–78 (Ct. App. 1986) (special relationship existed between school and parents such that school had a duty to notify parents upon learning of sexual assault).

### 3. No liability for MUSD

Defendants move to dismiss the negligence claim against MUSD because it is not based on any statute.  See Cal. Gov't Code § 815.  During oral argument, Plaintiffs stated that they are not pursuing this claim against MUSD.  The negligence claim against MUSD is dismissed with prejudice.

### H. Negligent Supervision Claim

Defendants move to dismiss S.G.'s negligent supervision claim against Mr. Robertson and MUSD because the allegations of the FAC are limited to Ms. Dombrowski's alleged abuse of S.G. See FAC ¶ 84 ("ROBERTSON was aware that DOMBROWSKI abused at least one student in her care, yet allowed her to go back to teaching non-verbal, disabled young children").  It is undisputed that S.G.'s parents pulled her out of school as soon as they learned of the alleged abuse, so she never encountered Ms. Dombrowski again.  FAC ¶ 16.  Defendants further argue that S.G. cannot maintain a negligent supervision claim based on negligence toward other children after she left the school.  If the negligent supervision claim were based solely on a failure to act after learning of the May 19, 2014 incident, the claim would fail.  However, there are sufficient allegations that Mr. Robertson was aware of abuse by Ms. Dombrowski prior to that date but failed to discipline or terminate her at that time.

### I. Violation of Mandatory Duty Claim

Defendants move to dismiss Plaintiffs' claim for violation of their mandatory duty under California Penal Code § 11165.9 to report suspected child abuse to certain agencies.  They rely on the police report introduced through judicial notice as evidence that Mr. Robertson did in fact

22

report the alleged May 19, 2014 abuse to authorities as soon as he learned of it.  Further, they contend that there is no allegation of any injury resulting from any violation of this duty, where S.G. was taken out of school the next day and Ms. Dombrowski was put on leave and investigated. FAC ¶ 16-17.  However, because there are plausible allegations of knowledge of earlier abuse which was not reported, the claim survives.

## VI.      CONCLUSION

For all of the foregoing reasons, Defendants' Motion is granted in part and denied in part. Plaintiffs' Unruh Act claim and negligence claim against MUSD are dismissed with prejudice. Plaintiffs' other claims survive as pled.  Plaintiff shall file an amended complaint within two weeks of the date of this order removing the dismissed claims.

**IT IS SO ORDERED.**

Dated:  September 27, 2016

ELIZABETH D. LAPORTE
United States Magistrate Judge